IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL STUDENT LEGAL DEFENSE NETWORK, 1015 15th Street NW, Suite 600 Washington, DC 20005<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, 400 Maryland Avenue SW Washington, DC 20202<br><br>*Defendant*. | Case No. 21-cv-0573 |

**COMPLAINT**

1. This case involves the failure of Defendant United States Department of Education ("Department") to respond to an administrative appeal ("Appeal") of a Petition for Correction and Disclosure ("Petition") submitted in accordance with the Information Quality Act ("IQA"), the Office of Management and Budget's ("OMB") IQA Guidelines, and the Department's IQA Guidelines.

2. In September 2018, Plaintiff National Student Legal Defense Network ("Student Defense") submitted the Petition to challenge an information dissemination contained in the Department's Notice of Proposed Rulemaking

("NPRM") related to its Gainful Employment Rule.[1] *See* Program Integrity: Gainful Employment, 83 Fed. Reg. 40,167, 40,180 (Aug. 14, 2018). That NPRM proposed that the Department entirely repeal the GE Rule. *Id.*

3. Because the NPRM failed to comply with the IQA in many respects, Student Defense outlined those failures and requested that the Department rescind the NPRM and, if it preferred, "correct and reissue [the NPRM] with information that complies with the IQA."

4. The Department did not provide a separate response to the Petition. Instead, on July 1, 2019, the Department issued a Final Rule, in which it included its response to the Petition and adopted the repeal proposed in the NPRM. *See* Program Integrity: Gainful Employment, 84 Fed. Reg. 31,392, 31,426–35 (July 1, 2019) (the "Repeal").

5. The Department's response to the Petition was inadequate, incomplete, and/or erroneous.

6. On July 31, 2019, Student Defense submitted its Appeal of the Department's response, in which it outlined the many ways in which the Department's response in the Repeal had failed to resolve, explain, or cure its IQA violations. Student Defense again suggested that the Department should, rather than compounding its mistakes, rescind the NPRM and accompanying Repeal and reissue an NPRM that did not run afoul of the IQA.

---

[1] *See generally* Program Integrity: Gainful Employment, 79 Fed. Reg. 64,890 (Oct. 31, 2014), *corrected by* 79 Fed. Reg. 71,957 (Dec. 4, 2014) (collectively, the "GE Rule").

7. The Department's IQA Guidelines provide that it will respond to any appeal within 120 days. *See infra* at ¶¶ 25–26 (describing how one version of the Department's guidelines imposes a 60-day deadline for the Department's response, while another version sets a 120-day deadline). That time has long passed, yet the Department has not responded.

8. Student Defense is therefore bringing this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706 ("APA"). Student Defense seeks a declaration that the Department's failure to respond to the Appeal constitutes an agency action unreasonably delayed. In addition, Student Defense seeks an order compelling the Department to issue a final decision in response to the Appeal within thirty days.

## PARTIES

9. Plaintiff Student Defense is a nonpartisan, non-profit organization incorporated in the District of Columbia. Student Defense's mission is to work, through a variety of means, to advance students' rights to educational opportunity and ensure that higher education provides a launching point for economic mobility.

10. Defendant United States Department of Education is a department of the executive branch of the United States government, headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1).

## JURISDICTION

11. This lawsuit is brought pursuant to the APA, 5 U.S.C. §§ 701–706, in order to compel agency action unreasonably delayed.

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically the APA, and the Department's obligation to respond to petitions submitted under the IQA.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Plaintiff resides in this district.

## THE INFORMATION QUALITY ACT

14. The IQA, together with its implementing guidelines, requires that information disseminated to the public by federal agencies, including the Department, be of requisite quality, objectivity, utility, and integrity.[2]

15. The IQA, an addendum to the Paperwork Reduction Act, 44 U.S.C. §§ 3501 *et seq.* ("PRA"), directs OMB to issue guidelines under various PRA authorities by September 30, 2001.

16. The IQA provides that OMB's guidelines should require each federal agency to which they apply to, in turn:

> (A) issue guidelines ensuring and maximizing the quality, objectivity, utility, and integrity of information (including statistical information) disseminated by the agency, by not later than 1 year after the date of issuance of the guidelines under subsection (a); [and]
>
> (B) establish administrative mechanisms allowing affected persons to seek and obtain correction of information maintained and

---

[2] Consolidated Appropriations Act, 2001, Pub. L. No. 106-554, § 515, 114 Stat. 2763, 2763A-153–54 (2000) (codified, in part, at 44 U.S.C. § 3516).

disseminated by the agency that does not comply with the guidelines issued under subsection (a).

44 U.S.C. § 3516 note (B)(2).

17. OMB issued "final guidelines," as directed, in 2002 after a period of notice and comment.[3]

18. In issuing its guidelines, OMB explained, "[g]iven the administrative mechanisms required by [the IQA] as well as the standards set forth in the Paperwork Reduction Act, it is clear that agencies should not disseminate substantive information that does not meet a basic level of quality." 67 Fed. Reg. at 8,452.

19. The OMB Guidelines elaborate on the directives set forth in the IQA itself. They define "quality," "utility," "objectivity," and "integrity," among other relevant terms. These definitions state, in part:

> "Quality" is an encompassing term comprising utility, objectivity, and integrity.
>
> "Utility" refers to the usefulness of the information to its intended users, including the public. In assessing the usefulness of information that the agency disseminates to the public, the agency needs to consider the uses of the information not only from the perspective of the agency but also from the perspective of the public. As a result, when transparency of information is relevant for assessing the information's usefulness from the public's perspective, the agency must take care to ensure that transparency has been addressed in its review of the information. . . .

---

[3] Office of Mgmt. & Budget, Exec. Office of the President, *Guidelines for Ensuring and Maximizing the Quality, Objectivity, Utility, & Integrity of Information Disseminated by Federal Agencies* ("OMB Guidelines"), 67 Fed. Reg. 8,451, 8,452 (Feb. 22, 2002), https://www.gpo.gov/fdsys/pkg/FR-2002-02-22/pdf/R2-59.pdf.

> "Objectivity" includes whether disseminated information is being presented in an accurate, clear, complete, and unbiased manner. This involves whether the information is presented within a proper context. Sometimes, in disseminating certain types of information to the public, other information must also be disseminated in order to ensure an accurate, clear, complete, and unbiased presentation.

20. Consistent with the IQA, the OMB Guidelines require agencies to "establish administrative mechanisms allowing affected persons to seek and obtain, where appropriate, timely correction of information maintained and disseminated by the agency that does not comply with OMB or agency guidelines." 67 Fed. Reg. at 8,459.

21. In April 2019, after Student Defense's Petition was submitted, but before its Appeal was submitted, OMB issued a memorandum requiring all agencies, including the Department, to update their IQA guidelines to "to reflect recent innovations in information generation, access, management, and use, and to help agencies address common problems with maintaining information quality." *See* Memorandum from Russell T. Vought, Acting Dir., Office of Mgmt. & Budget, *Improving Implementation of the Information Quality Act*, to the Heads of Executive Departments & Agencies 1 (Apr. 24, 2019), *available at*: https://www.whitehouse.gov/wp-content/uploads/2019/04/M-19-15.pdf. The memorandum instructed agencies to update their IQA guidelines in twenty separate ways and set a deadline of ninety days to do so. *Id.* at 2.

22. The April 2019 memorandum reaffirmed the need for agencies to "develop an administrative mechanism for affected parties to request that agencies correct information of inadequate quality, with an appeal process and annual

reports to OMB." *Id.* at 3. More specifically, under "Implementation Update 4.5," OMB reaffirmed that "[a]gencies should have procedures in place" to "ensure the integrity of the appeals process." *Id.* at 10–11.

23. The Department maintains a website that provides information to the public regarding its implementation of the IQA. *See generally* U.S. Dep't of Educ., Information Quality Guidelines, https://www2.ed.gov/policy/gen/guid/infoqualguide.html?src=ft (last modified July 23, 2019).

24. That website includes three different versions of the Department's IQA Guidelines.

25. One version is a Microsoft Word file. A second version is a PDF file. As it relates to appeals, the Microsoft Word and PDF files provide that parties dissatisfied with the Department's decision on a request may "appeal to the Department's Chief Information Officer" within thirty calendar days of receipt of the decision. These versions also provide that the Department's response to any appeal will be issued within 120 days of the Chief Information Officer's receipt of an appeal.

26. A third version of the Department's guidelines is included in text on the website itself. *See* U.S. Dep't of Educ., Information Quality Guidelines, https://www2.ed.gov/policy/gen/guid/iq/iqg_5d.html (last modified Oct. 17, 2005). As it relates to appeals, this version provides that parties dissatisfied with the Department's decision on a request may "appeal to the Department's Chief Data

Officer" via the "Director, Information Clearance Division," within thirty calendar days of receipt of the decision. This version provides that the Department's response to any appeal will be issued within sixty days its receipt of an appeal.

## FACTS

27. Despite ample evidence and acknowledgments by the Department that the GE Rule was working as intended, the Department took a series of steps to delay the enforcement and operation of the GE Rule between 2017 and 2019 under the leadership of former Secretary of Education Betsy DeVos. For example, less than four months after the change in administrations in 2017, the Department announced that it was considering repealing the GE Rule. In addition, the Department delayed an array of compliance deadlines for institutions regulated by the Rule. Many of those delays later became the subject of litigation.

28. On August 14, 2018, the Department published in the *Federal Register* the NPRM proposing to rescind the GE Rule. *See* 83 Fed. Reg. at 40,180. The Department promulgated the Gainful Employment Rule in 2014 to comply with the Higher Education Act of 1965's ("HEA") mandate that certain postsecondary institutions only participate in Title IV programs (and serve as conduits for students to receive federal student loans and grants) if their educational programs "prepare students for gainful employment in a recognized occupation." *See* 79 Fed. Reg. at 64,890.

29. The NPRM contained numerous factual claims without disclosing the underlying sources or methodologies, a clear failure to comply with the IQA. Where

the NPRM did cite sources, it repeatedly stated conclusions that were unsupported by evidence.

30. On September 5, 2018, Plaintiff submitted the Petition. A true and correct copy of the Petition can be found on the Department's website and is attached hereto as Complaint Exhibit 1.

31. The Petition set forth facts detailing how the NPRM was not in compliance with the standards of the IQA.

32. Although the Department initially asserted that Student Defense's Petition was "not considered a proper request under the Information Quality Act," *id.*, it later apologized and clarified—consistent with its IQA Guidelines—that "[a] response . . . will be provided as part of the [D]epartment's response under the Notice of Proposed Rulemaking." *See* Appeal, Ex. C, Email Correspondence at 1 (attached hereto as Compl., Ex. 2); *see also id.*, Ex. A at 13 (specifying that "[c]omments about information on which the Department has sought public comment, such as rulemaking or studies cited in a rulemaking, will be responded to through the public comment process, or through an individual response if there was no published process for responding to all comments").[4]

33. On July 1, 2019, the Department issued its Repeal, which included a response to the Petition. *See* 84 Fed. Reg. at 31,426–35. Although the Department

---

[4] The Department's website provides a copy of what it describes as its IQA "Response to National Student Legal Defense Network dated September 10, 2018." In a subsequent communication, the Department disavowed its September 10, 2018, response that Student Defense's request was improper. *See* Compl., Ex. 2 (Appeal, Ex. C, Email Correspondence at 1).

9

also stated that "[o]nce final, the response w[ould] be provided to [Student Defense]," Compl., Ex. 2 (Appeal, Ex. C, Email Correspondence at 1), Student Defense never received direct communication from the Department with its response to the Petition.

34. On July 31, 2019, Plaintiff submitted an Appeal of the Department's response. A true and correct copy of the Appeal can be found on the Department's website and is attached hereto as Complaint Exhibit 2.

35. The Department never responded to the Appeal.

**36.** On February 25, 2021, undersigned counsel informed relevant personnel in the Department's Office of General Counsel and the United States Department of Justice that Student Defense was preparing a lawsuit regarding the Department's failure to respond to the Appeal. Counsel requested a response by March 2, 2021. Neither the Department nor the Department of Justice responded.

## COUNT I

37. Plaintiff herein incorporates all allegations in the above paragraphs as if fully set forth herein.

38. The IQA, OMB's IQA Guidelines, and the Department's IQA Guidelines require that information disseminated by agencies meet a requisite level of quality.

39. The NPRM is information disseminated by Defendant within the meaning of the IQA and its implementing guidelines.

40. Defendant had a duty and was otherwise required to respond to the Appeal within a specified timeframe.

41. Defendant has failed to respond to the Appeal within that timeframe or within a reasonable amount of time after the expiration of that timeframe.

42. The APA, 5 U.S.C § 706(1), provides for judicial review to compel agency action if it is unreasonably delayed. It also grants judicial review to a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."

43. An "agency action" includes the "failure to act." 5 U.S.C. § 551(13).

44. Defendant's violation is ongoing.

**45.** Due to Defendant's failure to respond within a reasonable time, this Court should compel Defendant to act.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

*First*, declare that Defendant's inaction in response to the Appeal constitutes an unreasonable delay;

*Second*, order the Department to respond substantively to the Appeal within thirty days;

*Third*, award Plaintiff its costs and reasonable attorneys' fees; *and*

*Fourth*, grant such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/Daniel A. Zibel*
Daniel A. Zibel (D.C. Bar No. 491377)
Aaron S. Ament (D.C. Bar No. 1602164)
Robyn K. Bitner (D.C. Bar No. 1617036)
National Student Legal Defense Network
1015 15th Street NW, Suite 600
Washington, DC 20005
(202) 734-7495
dan@defendstudents.org
aaron@defendstudents.org
robyn@defendstudents.org

March 4, 2021